UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY W. WAGNER, )<br>)<br>*Plaintiff,* )<br>)<br>v.                                  )<br>)<br>WILLIAM HYATTE and           )<br>GEORGE PAYNE, JR.,           )<br>)<br>*Defendants* ) | CAUSE NO. 3:21-CV-479 RLM-MGG |

OPINION AND ORDER

Jeffrey Wagner has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Wagner sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Wagner has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Wagner requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 16], GRANTS Mr. Wagner's

motion for summary judgment, [Doc. 31], and DENIES AS MOOT Mr. Wagner's request for oral argument. [Doc. 45].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't defeat summary judgment by merely alleging a factual dispute; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1]   Mr. Wagner's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 14], and he requests consolidated oral argument. [Doc. 45]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Jeffrey Wagner alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility from September 3 to November 3, 2020. He alleges that his cell had broken lights and a window covered with sheet metal, so was extremely dark, and live wires draped from the ceiling. He claims psychological and physical harm resulted. Mr. Wagner claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Wagner sued from prison, so the defendants aren't liable if they can show that Mr. Wagner didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree as to the substance of the written policy, which is thoroughly set out in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 4–6. The court adopts that discussion for purposes of this case.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Wagner filed a grievance but didn't exhaust the appeals process. Their evidence includes the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 16-2], Mr. Wagner's grievance history and copies of grievances, [Doc. 16-3], and a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility. [Doc. 16-1].

Mr. Gapski handles grievances and appeals as an offender grievance specialist at Miami Correctional Facility. He reviewed Mr. Wagner's grievance records. He attests to the steps prescribed by the grievance policy and attests that that's the only official policy. He also attests to Mr. Wagner's grievance history.

According to Mr. Gapski, the prison received a formal grievance from Mr. Wagner on October 16, 2020. The grievance complained about Mr. Wagner's cell's darkness and was dated October 13, 2020. A grievance specialist denied the grievance on October 30, explaining that it included multiple issues and that events before October 1 were outside the time of issues that could be grieved.

4

Mr. Gapski also attests that his office received a grievance from Mr. Wagner on October 22, 2020, dated October 7, 2020. The grievance was accepted and logged as grievance number 119013. The grievance complained about lack of light, the broken and covered window, and no running hot water.

A grievance specialist responded, explaining that Mr. Wagner's location was determined by his classification and he could be moved once an investigation into his conduct was completed. The grievance specialist added that the windows were replaced with steel because of the cost of replacement and that light fixtures would be replaced as quickly as possible.

Mr. Gapski's office received a grievance appeal on December 8, 2021, dated November 29. A grievance specialist rejected the appeal as untimely.

Mr. Gapski says that there are no records of other grievances or appeals about Mr. Wagner's cell. He insists, "[i]f [Mr.] Wagner had timely submitted a formal grievance appeal, the Warden and/or Central Office would have received it and responded to it, in accordance with procedure." [Doc. 16-1 at 7].

The defendants' exhibits include the earlier grievance and its return of grievance form as well as Mr. Wagner's second grievance, its response report (marked with "disagree" and signed by Mr. Wagner November 29, 2020), and the return of grievance form rejecting the appeal as untimely.

*Mr. Wagner's Account*

Mr. Wagner asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 29-7 at 128–

5

137], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the prison, [Doc. 29-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 29-2 to 37-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 29-6].

According to Mr. Wagner's declaration, he was placed in restrictive housing from September 3 to November 3, 2020. He says he filed a grievance on October 7 complaining about his cell conditions. It was assigned number 119013 and he received a response on November 24. Mr. Wagner marked "disagree" then signed and submitted the response on November 29, 2020. His appeal was met with a Return of Grievance Form that said his grievance was marked received on December 8, so was untimely.

He filed another grievance in the meantime, on October 13, 2020. The grievance was rejected with a Return of Grievance form, explaining that the complaint was about multiple issues and issues that were untimely.

Based on the responses, Mr. Wagner didn't file any more grievances — he figured if he couldn't complain about his cell condition because it wasn't a new issue, then any new grievance would be untimely.

Mr. Wagner presents Mr. Gapski's testimony as evidence that the grievance process was unavailable. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional

6

Facility handled the grievance process. He explained that in restrictive housing, like Mr. Wagner's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Wagner also presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

## Discussion

Mr. Wagner and the defendants move for summary judgment on the exhaustion defense. The governing law is set out thoroughly in the court's order

7

on cross-motions for summary judgment in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, and the court adopts by reference discussion of the governing law.

Mr. Wagner argues that he exhausted all available remedies while the defendants argue he didn't. Approaching from his point of view makes for a clearer picture.

Mr. Wagner first focuses on his appeal that was rejected as untimely. Mr. Wagner received an unfavorable response to grievance number 119013, so he marked the response as "disagree" and returned it, as policy required. The response was dated November 24, 2020, and policy gave five business days to appeal. The appeal was due December 2 because November 26 was Thanksgiving and November 28 and 29 were the weekend. Mr. Wagner says he signed and submitted the appeal on November 29, and the appeal is dated November 29. The grievance specialist received the appeal December 8, so rejected it as untimely.

Mr. Wagner disputes that his appeal was untimely. He says he signed and submitted it on November 29, which would make it timely. He presents evidence from Mr. Gapski's testimony that no one can track a grievance between when a prisoner hands it to prison staff or puts it in a mailbox and when a grievances specialist receives it.

According to Mr. Wagner, he had no way of appealing or correcting his appeal's wrongful rejection. No administrative remedies for an appeal wrongly rejected as untimely existed. The policy simply didn't account for it. If the

8

grievance specialists reject a *grievance,* the policy requires that the prisoner revise and resubmit the grievance. That part of the policy doesn't address rejected appeals, and the policy defines appeals and grievances differently. [Doc. 16-2 at 1–2].

Neither could Mr. Wagner appeal the rejection. The policy requires that prisoners appeal a grievance specialist's response, the warden's response, any non-response from a grievance specialist or the warden once a certain period has passed. A prisoner must appeal using State Form 45473, which comes with the grievance specialist's or warden's response. That form doesn't come with a rejection, though, so Mr. Wagner couldn't have appealed his appeal's rejection if he tried. His rejection came with State Form 45475, Return of Grievance, which is no good for appeal.

The defendants don't respond to the substance of these arguments other than to say that there's a fact dispute about when Mr. Wagner submitted his appeal. They insist that the grievance officer marking the appeal received December 8 creates a factual dispute.

That evidence doesn't controvert Mr. Wagner's account for several reasons. First, Mr. Wagner has produced evidence that the prison has no way of tracking when a prisoner sends a grievance and what happens to it between the prisoner's hand and the grievance specialist's "received" stamp. Second, the defendants have no evidence that grievances are received the same day they're submitted. Without that sort of evidence, receipt on December 8 doesn't contradict Mr. Wagner's assertion that he sent the appeal earlier. Finally, the policy requires

9

that a prisoner "submit" an appeal within five business days without defining that term. The defendants provide no reason why that term must be read as "receipt" instead of "signed" or "sent" when other parts of the policy use "receipt" to set deadlines. Receipt on December 8 doesn't create a genuine issue of fact.

The grievance specialists improperly rejected Mr. Wagner's appeal and the prison policy gave him no way of appealing or resubmitting. He was forced into a dead end, so he exhausted all available administrative remedies.

Warden Hyatte and Deputy Warden Payne raise other arguments, but none is convincing. They cite other prisoners' experience as proof that Mr. Wagner had full access to all steps. Jeremy Blanchard, a plaintiff in a consolidated case, Blanchard v. Hyatte, 3:21-CV-160-RLM-MGG, successfully filed a final appeal. The defendants say this shows that Mr. Wagner could therefore file a final appeal. That the prison responded to Mr. Blanchard in a way allowing him to complete the appeals process doesn't contradict Mr. Wagner's claims and evidence that he was forced into a dead end with an improperly rejected grievance and no way to appeal a rejection.

The defendants argue that Mr. Wagner can't claim administrative remedies were unavailable because the process wasn't too onerous. Evidence shows that prisoners receive information about the grievance policy upon arriving at Miami Correctional Facility, so the defendants argue he can't claim he didn't know how the process worked. This argument misses the mark because Mr. Wagner doesn't argue he was never told what the policy was — he argues that he was improperly denied appeals and was forced into dead ends. They then cite his other

10

successful grievances as evidence that he knew how the process worked. Again, that evidence doesn't controvert Mr. Wagner's evidence that these attempts at grievances were inhibited.

Mr. Wagner exhausted available remedies with grievance number 119013. To exhaust, "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013). Both grievances complained about the ongoing conditions in Mr. Wagner's cell, so the court needn't address Mr. Wagner's other grievance.

The defendants' motion for summary judgment seeks judgment based on the lack of records of higher-level appeals. While they're correct that there weren't recorded appeals about Mr. Wagner's cell conditions, the earlier discussion shows why — appealing grievances was made a dead end for Mr. Wagner.

In summary, the defendants' argument that the absence of evidence is the evidence of absence doesn't contradict Mr. Wagner's evidence that administrative remedies weren't available. The defendants' evidence is consistent with Mr. Wagner's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Wagner. Administrative remedies weren't available to Mr. Wagner, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC,

11

No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Wagner's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Wagner's motion for summary judgment without a Pavey hearing.

Mr. Wagner requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Wagner's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT. Mr. Wagner's motion for consolidated oral argument.

SO ORDERED.

ENTERED:  August 15, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court